UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARLOS CANTRELL,

    Plaintiff,

v.                                                               CASE NO. 08-CV-12297

COMMISSIONER OF                                 DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,                                  MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.     REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 11.)

Plaintiff was 39 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 4 at 20.) Plaintiff's relevant employment history includes work fixing pallets and as a landscaper. (Tr. at 109.)

Plaintiff filed the instant claims on January 24, 2005, alleging that he became unable to work on October 10, 2000. (Tr. at 52, 255.) The claims were denied at the initial administrative stages. (Tr. at 33, 254, 259-62.) In denying Plaintiff's claims, the Defendant Commissioner considered hernias as a possible basis of disability. (*Id.*) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 31), which was held September 4, 2007, before ALJ Bennett S. Engleman. In a decision issued October 12, 2007, the ALJ denied Plaintiff's claims. (Tr. at 14-22.) Plaintiff requested review of this decision. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 28, 2008, when the Appeals Council denied Plaintiff's request for review. (Tr. at 2-4.) On May 28, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531

3

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

5

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work . . . ."  *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in February 2005, Plaintiff underwent x-rays of the spine and electromyographic testing. (Tr. at 149.) Plaintiff was also examined by Zouheir Fares, D.O., who recommended that he undergo hernia repair surgery. (Tr. at 189.) In March 2005, Plaintiff underwent a baseline echocardiogram and a cardiac exercise stress test, as well as an echogram of the left lower abdominal quadrant. (Tr. at 146-47, 186.) In May 2005, Plaintiff underwent bilateral sacroiliac joint injections. (Tr. at 170-71.) Between August and December 2005, Plaintiff was seen at the request of another physician, Dr. Boike. (Tr. at 189-93.) He also underwent an intake assessment at Hurley Mental Health Associates. (Tr. at 210-16.) In January 2006, Plaintiff was seen at the request of his doctor by physicians at the University of Michigan Medical Center. (Tr. at 194-95.) Plaintiff also underwent caudal epidural steroid injections. (Tr. at 196.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and, after considering apparent contradictions between Plaintiff's testimony and records of the Commissioner, concluded:

> It is very difficult under the circumstances to evaluate the claimant's work activities after the alleged onset date. For ease of adjudication I have continued in the sequential evaluation process. However, I really believe the claimant appears to have engaged in substantial gainful activity during at least some period of time after the alleged onset date.

(Tr. at 17.) At step two, the ALJ found that Plaintiff's lumbar degenerative disc disease, chronic back pain, depression, hernias and infection of the left index finger were "severe" within the

7

meaning of the second sequential step. (Tr. at 17-18.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18.) At step four, the ALJ found that Plaintiff could not perform his previous work. (Tr. at 20.) At step five, the ALJ found that Plaintiff had the residual functional capacity to undertake a number of inspector, machine operator and assembler jobs. (Tr. at 20-21.) Therefore, The ALJ found that Plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. (*Id.*)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to undertake a range of light exertion work. (Tr. at 31.) The Commissioner's regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Electromyographic studies conducted in February 2005 were normal. (Tr. at 149.) X-rays of the cervical spine taken in February 2005 were negative. (Tr. at 150.) X-rays of the lumbar spine indicated mild degenerative changes, along with the generative narrowing in the third and fifth lumbar intervertebral spaces. (Tr. at 151.) The March 2005 echocardiogram indicates that the chambers of Plaintiff's heart were of normal size and indicated no apparent cardiac wall motion abnormalities. (Tr. at 146.) The echocardiogram was considered negative for cardiac ischemia. (*Id.*) A cardiac exercise stress test conducted the same day indicated that Plaintiff could exercise for 10.5 minutes, expending 12.4 METS of energy. (Tr. at 147.) The doctor reviewing the results of this examination concluded that Plaintiff had good exercise tolerance for his age, that there were no cardiac arrhythmias, and that Plaintiff had good left ventricle function. (*Id.*)

In April 2005, Dr. Avery Jackson reported to another physician that although Plaintiff suffered sacroiliac joint pain, strength was 4+/5 and straight leg raising tests were negative. (Tr. at 172.) In July 2005, the doctor reported that Plaintiff exhibited back and leg pain, but that strength in the legs was normal and the doctor elicited "no gross sacroiliac joint pain to palpation." (Tr. at 163.) The doctor felt that Plaintiff should continue "nonsurgical care [.]" (*Id.*) In October 2005, Dr. Mazlouni, after a series of examinations, stated that he found no evidence of hernias and

9

did not believe that surgical intervention was appropriate. (Tr. at 181, 185, 187.) An echogram of Plaintiff's left lower quadrant showed no discrete abnormalities. (Tr. at 186.)

In December 2005, Dr. Boike reported that although Plaintiff's physical therapist recounted complaints by Plaintiff of significant pain, a therapist also reported that Plaintiff "was able to demonstrate considerable physical capacity." (Tr. at 190.) Dr. Boike reported that his physical examination revealed normal strength in both legs, and only a slight decrease in lumbosacral spine flexibility. (*Id.*) The doctor further stated that:

> "Mr. Cantrell has widespread and dramatic pain complaints. This examination is largely unremarkable. Lumbosacral MRI scanning has demonstrated relatively minor pathology [.]. . . at this point I have no additional recommendation other than for Mr. Cantrell to be as active as possible and to perform his home exercise program on a regular basis.

(*Id.*)

The next month, physicians at the University of Michigan Medical Center reported that Plaintiff had an "adequate" range of motion in the back and no weakness on heel to toe walking. (Tr. at 194.) Straight leg raising tests were unremarkable and no sensory deficits were filed, although one orthopedic test elicited pain. (*Id.*) Review of x-rays showed no evidence of a herniated disc or nerve root compression. (*Id.*)

The Hurley Mental Health Associates' intake summary indicates that although Plaintiff appeared somewhat depressed, his general appearance, motor activity, memory, behavior, orientation, intellect, judgment, and thought control all appeared normal. (Tr. at 214.)

On this record, although there is some evidence to the contrary (Tr. at 151, 154-55, 176, 196-98), I suggest that the objective medical findings summarized above constitute substantial evidentiary support for the ALJ's findings. Plaintiff counsel's primary argument to the contrary

10

is that Plaintiff suffers from disabling mental impairments.  However, I suggest that the evidence in this case falls considerably short of that deemed sufficient in this circuit to justify a finding of disability.  *See, e.g., Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991) (claimant experienced "continuing and unrelenting episodes of violent and suicidal behavior, chronic anxiety and abnormal dependency with an inability to handle stress").

In addition, it is the law of this circuit that a claimant must meet all criteria of a listing in order to be deemed disabled on the basis of the medical evidence alone.  *Young v Sec'y of Health & Human Servs.*, 925 F.2d 146, 150 (6th Cir. 1990) (claimant not disabled where she met the "A" criteria but not the "B" criteria of a somatoform disorder under section 12.07 of 20 C.F.R. Pt. 404, Subpt. P, App. I).  Plaintiff appears to rely upon the opinion of Dr. Gotlib. (Tr. at 251.)  It is settled law, however, that controlling weight is only given to the opinions of treating physicians.  A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'"  *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987)).   After review of this record, I suggest that the ALJ is entirely correct in his refusal to credit these findings.  The ALJ concluded that

> [t]his opinion is not supported by the record, [the] low intensity of therapy, and with the claimant's activities of daily living.  This physician is not reported . . . as a current treating physician.  This physician appears to have been unaware of the claimant's recent work for his brother.  This physician does not describe the basis for his findings.

(Tr. at 18.)

I further suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself. (Tr. at 554.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The ALJ failed to find Plaintiff's complaints of disabling pain fully credible. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. When weighing credibility, an ALJ may

12

give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under these standards, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

Finally, I suggest that, had the ALJ chosen to do so, there is substantial evidence on this record to support a finding that Plaintiff cannot qualify for benefits because he undertook substantial gainful employment after the date he stated his disability began. *See* 20 C.F.R. §§ 404.1520(b), 404.1571, *et seq.*; 416.920(b), 416.971, *et seq.* Evidence supporting this conclusion includes statements Plaintiff made to examining physicians at the University of Michigan, computerized wage records kept by the Commissioner, and Plaintiff's own testimony during the administrative hearing. (Tr. at 39, 192, 274-79.)

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/ 𝒞harles 𝐸 𝐵inder
                                          CHARLES E. BINDER
Dated: December 30, 2008             United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Mikel E. Lupisella, Judith E. Levy, and the Commissioner of Social Security, and served on U.S. District Judge Tarnow in the traditional manner.

Date:  December 30, 2008          By      s/Patricia T. Morris
                                               Law Clerk to Magistrate Judge Binder